# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>CHONG HAE KIM,<br><br>    Debtor. | Case No. 10-01658<br>Chapter 7 |
| HENRY HANG KIM and BOK SANG KIM,<br><br>    Plaintiffs,<br><br>  vs.<br><br>CHONG HAE KIM,<br><br>    Defendant. | Adv. Pro. No. 10-90114<br><br><br><br><br><br>Re: Docket No. 2 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial in this adversary proceeding was held on April 25, 2011. Robin Melchor represented plaintiffs and defendant Chong Hae Kim represented herself. Based on the evidence, the court makes the following

### FINDINGS OF FACT:

1. Plaintiffs Henry Hang Kim and Bok Sang Kim, husband and wife, owned a home in the Punchbowl neighborhood of Honolulu that was free and clear of mortgages.

2. Henry and Bok Sang Kim met Tae Kyun Kim ("Tae Kim") through church membership. (Henry and Bok Sang Kim are not related to Tae Kim or Chong Hae Kim.) They formed a close personal relationship. They socialized almost daily, and Tae Kim referred to Henry Kim as "daddy."

3. Tae Kim owned a construction company. He offered to sell to Henry and Bok Sang Kim a house on Kahaloa Drive which he was enlarging. He told Henry and Bok Sang Kim that, once he finished enlarging the house, Henry and Bok Sang Kim could live in a portion of the house and rent the rest for $5,000 to $7,000 per month. He offered to sell them the Kahaloa Drive property for $1.3 million.

4. Henry Kim said that he could not afford to buy the Kahaloa Drive house and still own his Punchbowl home. Tae Kim said his sister, Chong Hae Kim (the debtor in this bankruptcy case), could buy the Punchbowl home. Tae Kim told Henry Kim that he could not buy the Punchbowl home himself because his credit was bad. Chong Hae Kim also held title to the Kahaloa Drive property.

5. Henry and Bok Sang Kim agreed with Tae Kim that Henry and Bok Sang Kim would sell the Punchbowl home to Tae Kim's sister, Chong Hae Kim, for $650,000, payable by way of a down payment on the Kahaloa Drive property. The parties contemplated that Henry and Bok Sang Kim would buy the Kahaloa

2

Drive property for $1.3 million. Henry Kim did not want to sign a contract to buy the Kahaloa Drive property, however, until the construction was finished.

6. The sale of the Punchbowl property closed and Chong Hae Kim took title to that property. Henry and Bok Sang Kim did not take title to the Kahaloa Drive property because the construction project was not completed. Henry and Bok Sang Kim moved into the completed portion of the Kahaloa Drive property and have lived there ever since.

7. While the construction was still incomplete, Tae Kim told Henry Kim that he had another party interested in the Kahaloa Drive property and that the price would now be $1.8 million. Henry Kim demanded the return of his "down payment" (i.e., the agreed price for the Punchbowl property) in the amount of $650,000. Tae Kim responded that he did not have that much money.

8. On November 9, 2006, the parties signed documents which were apparently intended to resolve the dispute. Chong Hae Kim, as maker, and Tae Kim, as guarantor, signed a promissory note in favor of Henry and Bok Sang Kim in the principal amount of $650,000, secured by a third mortgage on the Kahaloa Drive property.

9. Neither Chong Hae Kim nor Tae Kim ever made any payments on the note.

10. Chong Hae Kim took title to the properties and signed the note and mortgage in favor of Henry and Bok Sang Kim at the request of her brother, Tae Kim. Tae Kim took a stack of documents to Chong Hae Kim and pointed out to her where she needed to sign. He told her only that the documents were necessary for family business. Chong Hae Kim trusted her brother and signed the documents without knowing what they were. She did not understand that she was taking title to either property or promising to make payments to Henry and Bok Sang Kim.

11. Tae Kim persuaded Henry and Bok Sang Kim to sign a release of the mortgage on the Kahaloa Drive property by promising to pay them $200,000. Tae Kim got the mortgage release but never paid the promised money to Henry and Bok Sang Kim.

12. Chong Hae Kim is a victim of her brother, Tae Kim, just as Henry and Bok Sang Kim are. Chong Hae Kim made no false representations to Henry and Bok Sang Kim. She signed the note and mortgage without knowing what they meant, at the request of and based upon her trust in her brother, Tae Kim.

Based on the foregoing findings of fact, the court makes the following

### CONCLUSIONS OF LAW:

1. The court has jurisdiction over this adversary proceeding, which is a core proceeding in bankruptcy. 28 U.S.C. § 157(b)(2)(I). Venue is proper.

2. Plaintiffs did not argue at trial, and therefore waived, claims based on 11 U.S.C. §§ 727(a)(2)-(4), (6), and (c)(1).

3. Plaintiffs' claim under 11 U.S.C. §§ 523(a)(19)(B)(i) and (ii) are not applicable to the facts in this adversary proceeding. Section 523(a)(19) applies to a violation of state or federal securities laws, or common law fraud related to the sale of a security. 11 U.S.C. § 523(a)(19)(A). These transactions did not involve a "security."

4. Plaintiffs contend, in their trial brief and at closing argument, that their claims against Chong Hae Kim are not dischargeable under section 523(a)(2) of the Bankruptcy Code. The complaint does not mention that section, but I will deem the complaint amended to conform to the proof. Fed. R. Bankr. P. 7015(b)(2).

5. Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); see also National Union Fire Insurance Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996); Meyer v. Rigdon, 36 F.3d 1375, 1385 (7th Cir. 1994).

6. The plaintiff seeking to establish an exception to the discharge bears the burden of proof. Fed. R. Bankr. P. 4005; see also In re Niles, 106 F.3d 1456,

U.S. Bankruptcy Court - Hawaii   #10-90114   Dkt # 23   Filed 05/03/11   Page 5 of 8

1464-65 (9th Cir. 1997). The plaintiff must meet this burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

    7.    Section 523(a)(2)(A) of the Bankruptcy Code provides:

A discharge under . . . this title does not discharge an individual debtor from any debt -

\* \* \*

    (2)    for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by -

          (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a); see also Cohen v. de la Cruz, 523 U.S. 213, 218-22 (1998). To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements:

    (1)    misrepresentation, fraudulent omission or deceptive conduct by the debtor;

    (2)    knowledge of the falsity or deceptiveness of his statement or conduct;

    (3)    an intent to deceive;

    (4)    justifiable reliance by the creditor on the debtor's statement or

6

U.S. Bankruptcy Court - Hawaii   #10-90114   Dkt # 23   Filed 05/03/11   Page 6 of 8

> conduct; and
>
> (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Weinberg, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009); In re Slyman, 234 F.3d at 1085; Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996).

8. Plaintiffs have not established that Chong Hae Kim committed fraud within the meaning of section 523(a)(2). Henry and Bok Sang Kim argue that Chong Hae Kim committed actual fraud by signing the promissory note and mortgage without having any intention to pay the note. Chong Hae Kim signed the note only because her brother, Tae Kim, told her to do so. She did not intend to undertake any obligation to Henry and Bok Sang Kim. Henry and Bok Sang Kim had reason to know that Chong Hae Kim was acting solely as a nominee for her brother; Henry Kim testified that Tae Kim told him that Chong Hae Kim would buy the Punchbowl property rather than Tae Kim because Tae Kim's credit was bad. Chong Hae Kim made no false representations to Henry and Bok Sang Kim.

9. The evidence showed that Tae Kim made numerous false promises to Henry and Bok Sang Kim. There is no evidence, however, that Chong Hae Kim

7

U.S. Bankruptcy Court - Hawaii    #10-90114    Dkt # 23    Filed 05/03/11    Page 7 of 8

knew of, intended to participate in, or benefitted from her brother's misconduct.

## CONCLUSION

The court shall enter a separate final judgment determining that Chong Hae Kim's debt to Henry Hang Kim and Bok Sang Kim is dischargeable in bankruptcy.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 05/03/2011